**ST. PAUL MERCURY
INSURANCE COMPANY**

v.

**The GRAND CHAPTER OF PHI
SIGMA KAPPA, INC.**

v.

**ALEXANDER & ALEXANDER
INDIANA, INC.**

Civ. A. No. 85–6247.

United States District Court,
E.D. Pennsylvania.

Jan. 7, 1987.

Maureen Brown, White & Williams, Philadelphia, Pa., for St. Paul Mercury Ins. Co.

R.J. Stern, LaBrum & Doak, Philadelphia, Pa., for Grand Chapter.

J.P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Alexander & Alexander.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

St. Paul Fire and Marine Insurance Company brought the instant declaratory judgment action against the Grand Chapter of Phi Sigma Kappa in 1985 after this Court denied summary judgment in favor of the Grand Chapter in the underlying consolidated actions of Kenneth Barner and Herbert and Beverly Barner versus Phi Sigma Kappa, Nu Chapter, Lehigh University and The Grand Chapter of Phi Sigma Kappa. St. Paul seeks a declaration that an endorsement to the Grand Chapter's Comprehensive General Liability Agreement limited coverage to claims arising at the Grand Chapter's office in Indianapolis, Indiana. St. Paul has, however, continued to provide a defense to Grand Chapter in the underlying actions under a reservation of rights letter dated October 5, 1984. Discovery in this action having been completed, the parties filed cross-motions for summary judgment, now before the Court for disposition.

The Barners' underlying actions arose from an accident suffered by Kenneth Barner during a party at the Lehigh University Nu Chapter of Phi Sigma Kappa in April, 1983. Barner sustained catastrophic injuries when he jumped from a balcony of the fraternity house into a pile of hay on a slate patio.

It is undisputed that the hay-jumping incident was not part of the fraternity's hazing, nor was it in any way a prerequisite for admission to the fraternity.

Although the Grand Chapter and Nu Chapter, where the accident occurred, are separately incorporated entities, this Court held that there were material issues of fact in dispute with respect to Grand Chapter's

duty, or lack thereof, to the Barners. Accordingly, we denied Grand Chapter's motion for summary judgment. On the same date, we granted Lehigh's motion for summary judgment. Subsequently, we were informed by counsel for the Barners that they had settled their claim against Phi Sigma, Nu Chapter. Because the only remaining defendant in the underlying actions, Grand Chapter, is also the defendant here, proceedings in those cases have been held in abeyance pending resolution of the insurance coverage issue in this action.

Defendant Grand Chapter argues in its summary judgment motion that the policy issued by St. Paul covers events occurring in the United States and Canada and thus should not be limited, as St. Paul argues, to accidents which occurred only at its office in Indianapolis. (*See,* Exhibit E to Answer and Cross-Motion for Summary Judgment of Defendant, Doc. # 12). Attached to the policy in effect at the time of Kenneth Barner's accident, however, is an Endorsement Limiting Liability Coverage to Certain Locations, which reads, in pertinent part, as follows: "This endorsement limits your coverage under your Comprehensive General Liability Agreement. With this endorsement you're only covered for liability claims that arise from the following locations, or from work necessary or incidental to these locations". The location specified is the Grand Chapter's office at 3901 West 86th St. Indianapolis, Indiana. The Endorsement also specifically provides liability coverage in at least one additional instance: "Any conventions that the insured sponsors or conducts even if not at the above location is also covered for liability".

■ At the outset, the Court must determine whether the endorsement is effective in limiting coverage as it purports to do. The law of Pennsylvania[1], as applied by the Court of Appeals for the Third Circuit, recognizes the efficacy of a typewritten coverage-limiting endorsement vis-a-vis the

---

1. Both parties to the instant motions appear to agree that Pennsylvania law should govern the interpretation of the insurance contract at issue.

general printed language of an insurance policy: "If there is a conflict between the terms of the endorsement and those in the body of the main policy, then the endorsement prevails, particularly when it favors the insured". *St. Paul Fire & Marine Insurance Co. v. U.S. Fire Insurance Co.,* 655 F.2d 521, 524 (3d Cir.1981). Although in this case the endorsement does not happen to favor the insured, defendant Grand Chapter has neither cited authority nor advanced any other argument as to why the general rule of insurance contract construction with respect to endorsements should not control here, nor has the Court's own research disclosed any reason why the Endorsement should not be given full effect. Consequently, we conclude that coverage is limited by the above-quoted endorsement to the insurance policy.

Next, we are required to determine whether the terms of the policy, specifically the endorsement in this case, are clear or ambiguous as a preliminary matter to resolving the question of coverage. *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Insurance Co., et al.,* 803 F.2d 1308, 1311 (3d Cir.1986).

A policy provision may be considered ambiguous only if "reasonably intelligent people who consider it in the context of the entire policy would honestly differ as to its meaning". *Id.* at 1312. On the other hand, mere disagreement between the parties as to the proper construction of the language does not render it ambiguous. *Id.*

In this case, not only do plaintiff and defendant disagree as to the meaning of the endorsement, but plaintiff St. Paul appears to have construed the language differently in its motion for summary judgment than it did in its Amended Complaint, filed on the same date. In the Amended Complaint, St. Paul contends that, "The Endorsement specifically limited defendant's coverage to 3901 West 86th Street, Indianapolis, Indiana, and any convention that defendant sponsored and conducted". (¶ 8). In the motion for summary judgment, however, St. Paul recognizes that the

location specified also includes "work necessary or incidental to [this] location[ ]", but argues that since hay-jumping was not an activity sponsored or conducted by the Grand Chapter it was not "work" of the Grand Chapter and, hence, the endorsement precludes coverage. (Motion of Plaintiff for Summary Judgment, Doc. # 9). By this argument, St. Paul appears to concede that if hayjumping had been a sponsored or encouraged event, it could be considered part of the "work" of the Grand Chapter and covered even though the event did not occur at the location specified in the endorsement or at a Grand Chapter convention. Similarly, St. Paul takes pains to point out that hay-jumping was not a hazing activity, implying thereby that it would not deny coverage for hazing which occurred at a local Chapter.

Moreover, deposition testimony and exhibits indicate that neither the insured, Grand Chapter, the broker who procured the policy, Carter Mathews of Alexander and Alexander, nor the underwriter who handled the Grand Chapter's policy at St. Paul, James Byram, was certain of the endorsement's effect on coverage.

For example, Robert Saieg, Grand Chapter's Executive Director at the time of the accident, in the underlying cases and the official responsible for reviewing its insurance coverage, testified at his deposition that the endorsement meant that Grand Chapter's intent to have its conclaves and conventions insured had been given effect. (Deposition of Robert Saieg at 17, 18).

James Byram testified with respect to coverage of conclaves that, when questioned by Alexander and Alexander, he did not know whether a conclave fell under the definition of a convention, but expressed the opinion that conclaves were covered under the policy and Endorsement in any event. (Deposition of James Byram at 57–60). A conclave is described as " '... a board meeting, both in business and social' ", (*id.* at 57), indicating that such an event may well take place away from the insured premises.

Correspondence from Carter Mathews, in response to a telephone inquiry from Robert Saieg in 1982, which specifically requested information on the scope of coverage afforded by the liability policy, referred to an earlier inquiry as to whether Grand Chapter would be covered for claims against it arising from incidents at the chapter level. (See Exhibit B to Doc. # 12). Although the previous inquiry concerned coverage under another company's policy, Mathew's response to Saieg's question clearly indicates his belief that there was coverage under St. Paul's policy for occurrences at the chapter level.[2] (Exhibit C to Doc. # 12).

Finally, we note that the term "work necessary or incidental to these locations" is not defined in the policy or Endorsement and certainly permits honest differences with respect to its meaning, as will be discussed below.

■ For the foregoing reasons, we conclude that the Endorsement is an ambiguous provision of the policy. We likewise conclude that the parties did not have "a meeting of the minds as to the exact term in conflict". *Rich Maid Kitchens, Inc. v. Pa. Lumbermans Mutual Ins. Co.*, 641 F.Supp. 297, 308 (E.D.Pa.1986). Next, we consider the effect of the ambiguity with respect to coverage. Pennsylvania principles of construction require the Court to resolve an ambiguity of this kind in favor of the insured unless the parties possess equal bargaining power, such as when a large corporation, advised by counsel, is the insured. *First State Underwriters v. Travelers, supra,* at 1311.

Here, we conclude that the normal rules of insurance contract construction should be applied. Grand Chapter relied upon the advice of Alexander and Alexander for the most part, as well as on a somewhat informal procedure of seeking the advice of alumni fraternity brothers who were involved in the insurance industry. (*See,* Saieg deposition at 8, 9). The record does not suggest that the parties possessed equal bargaining power or that Grand Chapter received expert advice in the procurement of its general liability policy from St. Paul.

Moreover, St. Paul has failed to convince the Court that the occurrence in the underlying action did not arise from "work necessary or incidental" to the Grand Chapter. This issue is inextricably bound to the question of whether a special relationship exists between the Grand Chapter and its locals which imposes a duty upon Grand Chapter to control the conduct of its chapters in order to prevent injury to associates of the local chapters. As we held in the underlying action, the nature of the relationship between Grand Chapter and its locals is a question of fact. It is at least arguable that the "work" of the Grand Chapter, which trained and dispatched leadership consultants from its Indianapolis office to visit and critique locals around the country and which provided training for chapter officers, (Saieg deposition at 33), includes an assumed obligation to monitor the kinds of social events sponsored by the local chapters. Saieg testified that contacts with local chapters is work necessary

**2.** We note that Mathews' deposition testimony revealed that he has no recollection of having reviewed the Endorsement prior to becoming aware of St. Paul's reservation of rights letter in 1984. (*See,* Exhibit K to Doc. # 9).

Moreover, he expressed his belief that had he been aware of the Endorsement the present problems would not have occurred.

However, Mathews also testified: that his usual practice is to read new endorsements to an existing policy; that he must have seen this Endorsement although he is certain he did not review it; that he has no recollection of questions by Grand Chapter with respect to the sub-

ject matter of the Endorsement. The last statement is inconsistent with the testimony of Saieg and Byram, and with the contents of Exhibit C to Doc. # 12.

We conclude that the limited portions of Mathews' deposition supplied to the Court for use in deciding these motions do not establish that before St. Paul's reservation of rights letter, Mathews considered the Endorsement as limiting coverage in the manner for which St. Paul contends. At most, the testimony indicates that Mathews had no idea of the Endorsement's effect on coverage because he had never reviewed it.

to its office. (*Id.* at 1310). The existence, nature and extent of obligations of the Grand Chapter which may have arisen from such contacts is one of the issues to be determined by a jury in the underlying actions.

█ It may be that a jury will conclude that the Harners' claim against Grand Chapter lacks merit because no duty is owed them or for some other reason. In that case, of course, St. Paul will have no obligation to make a payment on behalf of Grand Chapter. At present, however, St. Paul has not borne its burden of proving that the occurrence in issue in the underlying actions is clearly not covered by the policy issued to Grand Chapter. Consequently, St. Paul is obligated to continue to provide a defense to Grand Chapter. *American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.,* 752 F.2d 71 (3d Cir.1985).

Moreover, if the jury returns a verdict in favor of the Barners it must necessarily conclude that the "work" of the Grand Chapter involves monitoring the activities of the local chapters of Phi Sigma and that such work was negligently performed in this instance. St. Paul will, in that event, be obligated to pay the judgment.

For the reasons stated, we will grant Grand Chapter's motion for summary judgment and deny that of St. Paul.

### ORDER

AND NOW, this 7th day of January, 1987, upon consideration of motions for summary judgment of plaintiff St. Paul Mercury Insurance Company, and defendant Grand Chapter of Phi Sigma Kappa, Inc., IT IS ORDERED that defendant's motion is GRANTED and plaintiff's motion is DENIED.

IT IS FURTHER ORDERED that judgment is entered in favor of the plaintiff and against the defendant St. Paul Mercury Insurance Company.