*289 Order and judgment (one paper), Supreme Court, New York County (Leland G. DeGrasse, J.), entered May 15, 2007, which, in a declaratory judgment action involving the amount of defendant insurer’s compensation for providing certain insurance coverage to plaintiff manufacturer’s distributors, denied plaintiffs motion for summary judgment, granted defendant’s cross motion for summary judgment, and declared that the loss conversion factor in the parties’ agreement applies to paid losses without regard to the deductible or self-insured retention under any policy covering plaintiffs distributors, unanimously modified, on the law, to deny defendant’s cross motion, vacate the judgment, and remand the matter for a trial on the issue of whether the parties intended to have a cap on the application of the loss conversion factor, and otherwise affirmed, without costs.
With regard to defendant’s compensation, the subject insurance agreement primarily relies on a claims handling fee to be calculated by applying a multiplier, or “loss' conversion factor” (LCF), and makes plaintiff responsible for a $500,000 deductible for each claim. More specifically, article III (C) provides for an LCF of “.203 of paid or incurred losses”; article III (D) defines “Loss Limitation” as “the amount of incurred losses to [be] included in [the] Paid Loss program premium,” and provides for a loss limitation of $500,000 for each type of insurance covered; the term “Paid Loss program premium” is not defined in the agreement; and article IV (C), which covers plaintiffs payment obligations, states that defendant shall bill plaintiff “each month for the amount of the preceding month’s Paid Losses multiplied by 1.203,” without any reference to loss limitation. Plaintiff argues that the “1.203” figure only makes sense if it incorporates a $500,000 deductible cap because “it is only within the first $500,000 of claims paid that [defendant] is entitled to be reimbursed for 100% of the paid losses plus a 20.3% fee”; that the agreement would be rendered illusory were the 1.203 applied to an entire claim that exceeded the deductible; and that had defendant wanted the LCF to apply to amounts above $500,000, it needed to make such intention express and specific, and could have done so by stating that 1.203 applied to the first $500,000 and that .203 applied to all amounts above $500,000. Defendant argues that had the parties *290 intended its claims handling fee be capped, such a cap would have been included in article IV (C); that the “1” in the “1.203” refers only to the $500,000 deductible; and that once the deductible has been exceeded the .203 is applied to the entire amount it pays out.
We find that the agreement is ambiguous as to whether there is a limitation on the application of the LCF. The language found in an endorsement to one of the policies is not specific with regard to how the .203 multiplier is to be applied and is not conclusive as to the parties’ intentions. The “rule of omission” should not be applied to conclude that the omission of a cap on the claims handling fee was intentional; such a reading would ignore the loss limitation provision and the fact that the payment section includes a “1.203” multiplier and not a “.203” multiplier. Nor does the extrinsic evidence submitted on the motions reveal the parties’ intentions. The doctrine of contra proferentem does not apply as the evidence submitted on the motions shows that while defendant prepared the drafts of the agreement, the basic concept and terms originated with plaintiff, that plaintiff is sophisticated and was instrumental in crafting various parts of the agreement, and that plaintiff, while not an insurance company, had equal bargaining power and acted like an insurance company by maintaining a self-insured retention (see Coliseum Towers Assoc. v County of Nassau, 2 AD3d 562, 565 [2003], lv denied 2 NY3d 707 [2004]; Loblaw, Inc. v Employers’ Liab. Assur. Corp., 85 AD2d 880, 881 [1981], affd 57 NY2d 872 [1982]). Concur—Lippman, EJ., Sweeny, Catterson, Acosta and Renwick, JJ.