It is objected that, in the petition of the park commissioners, the real estate sought to be taken is not described, and that the petition does not state the names and places of residence of the owners or claimants of such real estate, as required by the act under which the proceedings were taken. (Laws of 1872, chap. 45, § 2.)
The body of the petition does not contain these facts, but it is not claimed that they must be stated within the four corners of the formal petition.
It is conceded that the description of the property and the names of the owners may be given in any paper accompanying the petition and making a part of it.
While the law requires a strict compliance with every *Page 134 
requirement of a statute by which an individual may be divested of his property against his will, especially every requirement essential to the protection of the rights of the property owner, it looks to the substance rather than to the form, and, if there is a substantial compliance with every essential condition and requisite of the statute, it is sufficient, and the power will be duly exercised. A paper so referred to and described, in a written instrument, that it may be identified beyond all reasonable doubt, may be, by such reference, made a part of the instrument, as if incorporated into the body of it. (Tonnele v.Hall, 4 Comst., 140.) It is not necessary that the paper referred to should be annexed to or deposited in the same place with the instrument of which it is made a part by reference. It is the reference to the paper by proper description and identification, in a manner and by words indicating an intent to make it a part of the instrument, that affects the incorporation of it for all purposes.
Parol evidence may be resorted to to prove the identity of the paper. (Climar v. Cooke, 1 Sch. Lef., 22; Riley v. Cityof Brooklyn, 46 N.Y., 444.) It is most usual to annex papers designed to be incorporated in an instrument by a reference, and a simple reference to a paper thus annexed will suffice without more particular description, and, if referred to as annexed, and is not annexed, the defect cannot be supplied by parol. (Moir
v. Brown, 14 Barb, 39.) Neither is there any particular mode of reference to a paper, whether annexed or not, essential to make it a part of the chief or principal instrument. Any language which clearly indicates the intention of the parties or the maker of the instrument to that effect, will suffice, within the well established rule which calls upon courts to give effect to the intent as indicated by the words employed by parties. It is immaterial whether the connection of the two papers is shown by a reference in the body of the one to the other, or by a physical annexing of one to the other, in a manner or under circumstances showing clearly the intent that the two shall together make one instrument. *Page 135 
Mr. Parsons, in his treatise on Contracts (vol. 3, p. 17), speaking of an agreement, says: "It may be one or many pieces of paper, provided that the several pieces are so connected by mutual reference or otherwise that there can be no uncertainty as to the meaning and effect of them all when taken together and viewed as a whole."
The paper served on the owners and claimants of the property and presented to the court was properly indorsed as "Petition, description, notice, etc.," and consisted of several printed sheets firmly attached together and making but a single document or petition.
It was made up of parts arranged as follows:
First. The formal petition, signed and verified by the president of the board of commissioners.
Second. A full and accurate description of the several parcels of real estate sought to be taken, with the names of the owners, claimants and incumbrances of each, with their respective places of residence, each parcel of land described and the names of the owners or claimants thereof separately stated.
Third. A notice addressed to each and all the owners, claimants and incumbrancers, by name, "and all others who have or claim any estate or interest in the real estate herein described and set forth;" that the petition, a copy of which was then served, would be presented at a time and place named and motion made that the prayer thereof be granted.
In the body of the petition proper, the real estate is referred to as "hereafter fully described and set forth," and a particular statement is made in respect to the character of the claimants of three parcels, referred to by number, which are a part of the lots particularly described with the other parcels of land. The petition also states that "hereafter is stated the names and places of residence of the parties who own," etc. There was no other description of the real estate or statement of the names of the owners than as contained in the schedules annexed and inserted between the verification of the petition and the notice to the owners. *Page 136 
There can be no doubt that the petition referred to the description and names, as contained and stated in the paper, by the phrase "hereafter stated," and that the whole paper constituted the petition, the description of the premises and statement of the names of the owners, making, for convenience, by reference and by physical annexation, a part of the petition as clearly as if inserted before the signature and verification.
In the petition, verified as true by the oath of the president, it is stated that the board have deemed it necessary to take the ground and real estate "hereinafter fully described and set forth and belonging to the persons hereinafter named;" that as to lots 7, 9 and 11, they had been unable to acquire the title by agreement with the owners, for the reason that the lots were a part of an undivided estate and some of the persons in interest were infants, and as to the other real estate "referred to and described," the board and the owners had been unable to agree on the price. And again, "that hereinafter are stated the names and places of residence of the owners, claimants and incumbrancers," together with a statement of the liens and incumbrances on said real estate. The petition then describes and identifies the map referred to, and by which the lots are numbered, "as designated in the descriptions of the real estate herein." All these matters are fully stated in the sheets following the verification and preceding the notice of presenting the petition, and are as if written on the same sheet. The verification was to all the matters stated in respect to the description of the land, and "the names and residences of the claimants," else there was no petition. But there was a verification of all the matters which were declared by the petition to be thereinafter stated, and which were stated in the annexed sheets, and perjury could be assigned in respect to them as if they had been inserted in the body of the petition.
While the rights of property owners are to be carefully protected by all the guards which the law has thrown around them, substance should not be sacrificed to form, or the well *Page 137 
established rules of interpretation surrendered to a mere technicality.
The owners and claimants had the full benefit of the provisions of the act by a full description of the real estate taken, and the court had all the information that the law required as to the names and residence of those interested as owners, claimants or otherwise.
The description of the property taken and names of the owners must be read as a part of the petition, and thus read it was a compliance with the statute.
It is also objected that the law is vague, uncertain and ambiguous, and that intelligent effect cannot be given to it. If this be so, it is of no effect. But courts should be astute to find out some meaning to every statute, and should not impute to the legislature the doing of a senseless thing; and if an intent can be spelled out fairly from the words, effect should be given to that intent, although not artistically expressed. (Smith v.People, 47 N.Y., 330.)
The clear intent of the second section of the act (S.L. of 1872, 87) was to give the same powers and procedure for the taking of land for the Albany park as are given by the general railroad act of 1850, and the acts amending the same, as in force when this law was passed, and to confer the same power upon the park commissioners in respect to the taking of lands as was then vested in railroad corporations. This intent might have been expressed in better phraseology, but the intent is plain to every reader of the act, and no other intent can be imputed, and no other meaning can be extracted from the clause, and it is not necessary to guess or spell out an interpretation.
The meaning is patent.
The only other objection is that the law is unconstitutional in that it authorizes the taking of private property by the commissioners to be resold by them again. The act of 1870, chap. 377, section 9, does, in terms, give power to the commissioners to sell such parts of the land as had been vested in *Page 138 
them at that time, or that they should thereafter acquire, as they should think expedient.
But this does not detract from the power conferred, to take lands for the park, that is, streets, extensions or for approaches to it for public purposes.
The act of 1872 only authorizes land to be taken for this purpose, which is by the act declared to be a public use, and by section 4 (S.L. of 1872, p. 88) the fee of all land taken under the act, by the commissioners, is vested in them in trust for the purposes for which such real estate was acquired. Whatever may be the construction and effect of the provision in the act of 1870, the act of 1872 withholds the power of sale from the commissioners as to all land acquired by virtue of and under the provisions of the railroad acts, and such lands are to be held in trust for the purposes of the park.
The objections taken to the proceedings are not tenable, and the order must be affirmed.
All concur.
Order affirmed.