# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41310

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2017

Lyle W. Cayce
Clerk

ALEXANDER EDIONWE,

　　　　Plaintiff - Appellant

v.

GUY BAILEY; HAVIDAN RODRIGUEZ; THE UNIVERSITY OF TEXAS - PAN AMERICAN; THE UNIVERSITY OF TEXAS SYSTEM; THE UNIVERSITY OF TEXAS RIO GRANDE VALLEY,

　　　　Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, JONES, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This is one of at least seven wrongful termination cases arising out of the legislative abolition of the University of Texas-Pan American ("UTPA") and the University of Texas at Brownsville ("UTB"). For the reasons explained below, we AFFIRM in part and DISMISS in part.

## I.

In 1994, Alexander Edionwe was hired as an Associate Professor at UTPA. From 1994 to 1997, he served as the Program Coordinator of the school's Dietetics Program, and was awarded tenure from UTPA and the University of Texas System Board of Regents on or about September 1, 2000.

No. 16-41310

As a tenured faculty member, he was entitled to continuing employment at UTPA "until retirement or resignation unless terminated because of abandonment of academic programs or positions, financial exigency, or good cause."

In December 2013, the Texas Legislature passed legislation to "abolish[]" UTPA and UTB—effective August 31, 2015—and create a consolidated university in southern Texas later named the University of Texas Rio Grande Valley ("UTRGV"). 2013 Tex. Sess. Law Serv. 1849-1854 (West). "In recognition of the abolition of" UTPA and UTB, the legislature ordered the board of regents to "facilitate the employment at [UTRGV] of as many faculty and staff of the abolished universities as is prudent and practical," but left the exact procedures for carrying out this mandate up to the board's discretion. *Id.* at 1853. As such, the board developed a bifurcated application process for employment at UTRGV. Details about the application process were published on July 18, 2014, in a document titled "Hiring of Tenured and Tenure-Track Faculty Members to The University of Texas Rio Grande Valley Frequently Asked Questions."

Phase I hiring was open only to tenured and tenure-track faculty members from UTPA and UTB—whose "faculty appointments and tenure" were all scheduled to "terminate" on the day those universities were abolished. The board instructed the President of UTRGV to "recommend that the Board of Regents grant tenure to" all applicants who, in addition to satisfying six other requirements, held a "full-time, tenured faculty appointment" at UTPA or UTB and "*timely* complete[d] and submit[ted] all forms required by UTRGV to express the individual's interest in and qualifications for a tenured faculty appointment at UTRGV." UTRGV accepted Phase I applications from August 11, 2014 to September 8, 2014, a period of four weeks. On November 4, 2014,

2

No. 16-41310

UTRGV began accepting applications for Phase II, which was open to the general public and UTPA and UTB faculty not hired during Phase I.

One week before UTRGV published its Frequently Asked Questions about Phase I hiring, Edionwe left the country to visit Nigeria. At oral argument, Edionwe's attorney admitted that Edionwe was only gone "for a four week period"—meaning he returned on or about August 8, 2014, approximately three days before the Phase I application period even began. Edionwe failed to submit a timely application prior to the September 8, 2014 deadline. In October 2014, he contacted UTRGV and was instructed to wait and apply during Phase II.

On or about April 15, 2015, Edionwe submitted his Phase II application for an associate professorship in the Coordinated Program in Dietetics. He was interviewed on June 4, 2015 and again a week later. However, on August 5, 2015, he was informed that the position would not be filled. His employment and tenure at UTPA terminated on August 31, 2015.

Edionwe sued UTPA, UTRGV, the UT System, UTRGV President, Guy Bailey, and UTPA President, Hadian Rodriguez, in the 139th Judicial District Court of Hidalgo County, Texas, pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of procedural and substantive due process. He also sought declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. In his original complaint, he did not allege any specifics concerning the hiring process. The Defendants removed the case to federal court and filed a Rule 12(c) motion for judgment on the pleadings. Edionwe filed a response, or in the alternative, motion for leave to amend pleadings. The district court granted the motion for judgment on the pleadings, holding that Edionwe: (1) failed to establish a procedural due process claim because the legislative process afforded Edionwe all the due process he was entitled to receive; (2) failed to establish a substantive due process claim because he failed

to allege that the legislative action in question was not rationally related to a legitimate state interest; and (3) that his Declaratory Judgment Act claim must be dismissed because all of the Defendants were entitled to immunity. It failed to address Edionwe's alternative motion for leave to amend and issued a final judgment.

Edionwe then filed a motion to alter or amend judgment, which among other things renewed his request to amend his pleadings, attaching a proposed first amended complaint. The amended complaint included the above-mentioned details about the bifurcated hiring process. The district court denied his motion. Edionwe timely appealed.

## II.

A district court's grant of a Rule 12(c) motion for judgment on the pleadings is reviewed de novo. *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). We "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (alteration omitted).

No. 16-41310

A district court's denial of a motion to amend the pleadings is reviewed for abuse of discretion. *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013). "[A] court should freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Likewise, "[a] district court's denial of a motion to alter or amend judgment 'is reviewed for abuse of discretion and need only be reasonable.'" *Farquhar v. Steen*, 611 F. App'x 796, 800 (5th Cir. 2015) (quoting *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 231 (5th Cir. 2003)).

## III.

Section 1983 enables persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by the actions of a person or entity operating under color of state law to seek redress from those state actors responsible for the deprivations. 42 U.S.C. § 1983. Edionwe claims that administrators Bailey and Rodriguez violated his procedural and substantive due process rights by terminating his property interest in continuing employment. We disagree.

### *A. Property Interest*

The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (quoting U.S. Const. amend. XIV). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). Such entitlements are "not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Paul v. Davis*, 424 U.S. 693, 709 (1976).

No. 16-41310

It is undisputed that Edionwe had a legitimate property interest in continuing employment at UTPA: "a tenured faculty member . . . ha[s] a constitutionally protected interest in his employment." *Newman v. Kock*, 274 S.W.3d 697, 706 (Tex. Ct. App. 2008); *see also Perry v. Sindermann*, 408 U.S. 593, 599 (1972). But, Edionwe advances a number of theories to support his contention that he had *also* acquired a constitutionally protected interest in continuing employment at UTRGV and the UT System as a whole.

First, Edionwe argues that his property interest in employment at UTRGV and the UT System flowed from his tenure and twenty-one years of service at UTPA. But, "[u]nlike many . . . institutions of higher learning, faculty in the University of Texas system are tenured to their particular component *institution* . . . ." *Tex. Faculty Ass'n v. Univ. of Tex. at Dallas*, 946 F.2d 379, 386 (5th Cir. 1991); *see also* Board of Regents' *Rules and Regulations* 31007 § 1. As such, the property rights accumulated due to service at one university do not transfer to the others. Edionwe had no more interest in employment at UTRGV than he did at the University of Texas at Austin or at Harvard.

Edionwe's second argument, that "the 2013 legislation consolidating and/or abolishing UTPA and UTB . . . created an expectancy of transition" to and employment at UTRGV is similarly unavailing. While the legislature did guarantee that all "student[s] admitted to or enrolled at [UTPA] on the date of abolition [are] *entitled* to admission to [UTRGV]," it merely instructed the board of regents to "facilitate the employment at [UTRGV] of as many faculty and staff of [UTPA] *as is prudent and practical*." 2013 Tex. Sess. Law Serv. 1853 (West) (emphasis added). At most this created a "unilateral expectation" of employment, not a legitimate entitlement. *Roth*, 408 U.S. at 576.

Finally, Edionwe attempts to ground his alleged property interest in employment at UTRGV in two statements made by UTRGV administrators.

6

No. 16-41310

First, Bailey, UTRGV's president, allegedly said that "UTPA and UT Brownsville's faculty were being merged into UTRGV." Then, during Edionwe's Phase II interview, Dr. Michael W. Lehker, Dean of the College of Health Affairs at UTRGV, stated that "he believed there was an error with EDIONWE's transition from UTPA to UTRGV" and that he "should not have had to interview for his position" but should have been automatically "transitioned to UTRGV." In the past, we have held that such statements by university administrators are insufficient to create a property right: "the *school itself* must enter into the agreement which gives rise to a protected interest." *Staheli v. Univ. of Miss.*, 854 F.2d 121, 125 (5th Cir. 1988). Edionwe has failed to allege any facts that suggest UTRGV *itself*, through the board of regents, adopted a policy that guaranteed employment for all faculty from UTPA.

Accordingly, Edionwe had no constitutionally protected interest in employment or tenure at UTRGV or the UT System at large.[1] Rather his protected property interests were limited to an interest in continuing appointment at the institution that granted him tenure, UTPA, an interest which terminated when the university was abolished.

### B. Procedural Due Process

While Edionwe's interest in continuing employment at UTPA was protected, it is clear that the procedure used by the state to terminate it

---

[1] Edionwe points to a number of external documents and allegations outside the pleadings to argue that he did have a constitutionally protected property interest in employment at UTRGV, including: (1) "the hiring policy adopted by UT System Board of Regents for tenured faculty members at UTPA"; (2) the "UTRGV FAQ Statement on hiring tenured faculty members"; and (3) the fact that "UTRGV tenured and tenure-track faculty were given credit for years of service at UTPA." Because these allegations and documents were not included in the complaint or incorporated by reference, it would be inappropriate for us to consider them on appeal. *A2D Techs. Inc. v. MJ Sys., Inc.*, 269 F. App'x 537, 541 (5th Cir. 2008) ("[W]e typically may not consider materials or documents outside of the complaint in addressing a motion to dismiss.").

satisfied due process. "[W]hen a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due." *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993) (citing *Bi-Metallic Inv. Co v. State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915); *Logan v. Zimmerman Brush Co.*, 455 U.S. 441, 445-46 (1982)). Furthermore, the UTPA Handbook of Operating Procedures specifically provided that even a tenured professor's position could be "terminated because of *abandonment* of academic programs." That is exactly what happened here. UTPA—along with its component dietetics program—was abolished pursuant to a specific act of the Texas Legislature. The act affected not just Edionwe's property interest, but the property interests of "a general class of people," namely the faculties and staffs of UTPA and UTB.

## C. Substantive Due Process

"Public officials violate substantive due process rights if they act arbitrarily or capriciously." *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562-63 (5th Cir. 2003). "To prove a substantive due process violation in this context, an employee must show that a public employer's decision 'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" *Jones v. La. Bd. of Sup'rs of Univ. of La. Sys.*, 809 F.3d 231, 240 (5th Cir. 2015) (quoting *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)). "The bar is high because 'a federal court is generally not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* (quoting *Honore v. Douglas*, 883 F.2d 565, 569 (5th Cir. 1987)).

Edionwe's property interest in continuing employment at UTPA was terminated pursuant to an act of the legislature, *not* as a result of the actions of Bailey and Rodriguez, arbitrary or otherwise. Edionwe's assertion that the "promulgation and application of arbitrary and capricious hiring criterion [sic]

No. 16-41310

and an arbitrary deadline of application for transition resulted in Edionwe's termination of tenure," is therefore irrelevant. Edionwe's employment and tenure at UTPA would have terminated by August 31, 2015 *regardless* of whether he had been hired at UTRGV.

Having concluded that Edionwe failed to allege a constitutional violation, we need not address whether Bailey and Rodriguez were entitled to qualified immunity.[2]

## IV.

"Although the district court . . . did not explicitly deny the motion [for leave to amend pleadings], the entry of its 'FINAL JUDGMENT' was an implicit denial of any outstanding motions." *Tollett v. City of Kemah*, 285 F.3d 357, 369 n.* (5th Cir. 2002). As such, Edionwe now contends that the "district court erred when it denied [his] Motion for Leave to Amend Pleadings." We disagree.

While it is true that "[t]he court should freely give [a party] leave [to amend its pleadings] when justice so requires," Fed. R. Civ. P. 15(a)(2), such leave is not required where, as here, the movant "contend[s] that his pleadings sufficed to state a due process claim" throughout "his briefing in opposition to the Rule 12(c) motion" and "fail[s] to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies." *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010). Edionwe's motion to amend merely stated that "[i]f the Court is inclined to dismiss any

---

[2] We likewise decline to consider Edionwe's claim for declaratory judgment, exercising our "unique and substantial discretion in deciding whether to declare the rights of litigants" under the federal Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Although Edionwe's complaint seeks declaratory relief pursuant to the Texas Declaratory Judgment Act, "the removal to federal court causes the claim to be viewed as brought under the [federal] Declaratory Judgment Act." *i2 Techs. US, Inc. v. Lanell*, No. CIV.A.302CV0134G, 2002 WL 1461929, at *7 n.5 (N.D. Tex. July 2, 2002) (collecting cases).

portion of Plaintiff's complaint for failure to state a claim, Plaintiff requests leave of court to amend his complaint to cure the alleged pleading deficiencies identified by Defendants . . . ." As we have done in similar circumstances in the past, we have "little difficulty affirming [the] district court's denial of leave to amend." *Id.*

We likewise reject Edionwe's argument that the district court abused its discretion by denying his motion to alter or amend judgment. A Rule 59(e) motion "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). It "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). As such, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.* (citing *Clancy v. Emp'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

In his motion, Edionwe asserted three grounds for altering or amending the judgment. First, he argued that "a manifest error of law was committed by the trial court since Edionwe had a protected property interest [in employment at UTRGV]." Because this was simply a "rehashing" of the legal theory and argument raised and rejected prior to judgment, the district court did not abuse its discretion in denying it. *Id.*

Second, Edionwe contended that "a manifest error of law was committed by the trial court in not granting Edionwe leave to replead." As mentioned above, a bare bones motion to amend remains futile when it "fail[s] to apprise

the district court of the facts that he would plead in an amended complaint." *Gentilello*, 627 F.3d at 546.

Third, Edionwe again sought to amend his pleading, this time attaching a copy of his proposed, first amended complaint. This aspect of the district court's denial of Edionwe's Rule 59(e) motion is properly governed by the Rule 15(a) standard. *Jackson v. N.A.A.C.P.*, 575 F. App'x 256, 258 (5th Cir. 2014). While denials of Rule 15(a) and Rule 59(e) motions are both ostensibly reviewed for abuse of discretion, "the district court's discretion is considerably less under Rule 15(a)." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). In fact, the Supreme Court has enumerated just "five considerations in determining whether to deny leave to amend a complaint: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Id.* at 864 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Absent such factors, the leave sought should, as the rules require, be freely given." *Id.* (internal quotation marks omitted).

Edionwe's proposed amended complaint included additional allegations about the Phase I hiring plan, and incorporated by attachment two documents: (1) the plan for "Hiring of Tenured and Tenure-Track Faculty Members to [UTRGV]" as approved by the board of regents; and (2) an accompanying set of answers to "Frequently Asked Questions" about said hiring plan. He also alleged for the first time that because he "receiv[ed] no and/or inadequate notice from Rodriguez and Bailey," he was "unaware that UTRGV initiated Phase I hiring and of the September 8, 2014, deadline to apply."

Even accepting all of the allegations in the proposed amended complaint as true, Edionwe still failed to allege that he had a constitutionally protected property right to employment at UTRGV. Without a property interest, he could

not allege a deprivation of either procedural or substantive due process, even if Bailey and Rodriguez failed to provide him with adequate notice.

The hiring plan stated that "[t]he President of UTRGV [i.e. Bailey] shall recommend that the Board of Regents grant tenure to" all applicants who, in addition to satisfying six other requirements, held a "full-time, tenured faculty appointment" at UTPA or UTB and "*timely* complete[d] and submit[ted] all forms required by UTRGV to express the individual's interest in and qualifications for a tenured faculty appointment at UTRGV." The Frequently Asked Questions statement likewise enumerated the eight "hiring criteria for Phase I," which included the applicant "complet[ing] and submit[ting] the required online application on time." By his own admission, Edionwe did not even "inquire[] about Phase I hiring" until October 7, 2014, a month after the application deadline, and nearly two months after he returned to the United States. As the Frequently Asked Questions explain, meeting "all but one" requirement results in an applicant "not be[ing] eligible to be hired through Phase I."

Furthermore, the additional allegations make clear that even those applicants who fulfilled all eight hiring criteria were still not *entitled to* employment at UTRGV. The hiring plan states only that Bailey would "*recommend* that the Board of Regents grant tenure," not that it would definitely be granted. Likewise, the Frequently Asked Questions stop short of assuring eligible applicants of future employment:

> If I meet all the requirements in Phase I and submit all the required forms, how will I find out *if* I am getting a faculty position at UTRGV?
>
> UTRGV will contact you using the email address you provide in your online expression of interest.

No. 16-41310

Because such statements are insufficient to create a constitutionally protected property interest, Edionwe's proposed amended complaint is futile. The district court did not abuse its discretion.

## V.

For the forgoing reasons, we AFFIRM the district court's decisions: (1) granting the Defendants' motion for judgment on the pleadings with respect to Edionwe's § 1983 claims; (2) denying by implication Edionwe's motion for leave to amend pleadings; and (3) denying Edionwe's motion to alter or amend the judgment. We also DECLINE to exercise jurisdiction over and DISMISS Edionwe's declaratory judgment claim.