# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40443

United States Court of Appeals
Fifth Circuit

**FILED**
June 14, 2019

Lyle W. Cayce
Clerk

In the Matter of:  Linn Energy, L.L.C., et al

      Debtors

UMB BANK, NATIONAL ASSOCIATION,

      Appellant

v.

LINN ENERGY, L.L.C., LINNCO, L.L.C.; LINN ENERGY FINANCE
CORPORATION; LINN ENERGY HOLDINGS, L.L.C.; LINN
EXPLORATION & PRODUCTION MICHIGAN L.L.C.; LINN
EXPLORATION MIDCONTINENT, L.L.C.; LINN MIDSTREAM, L.L.C.;
LINN MIDWEST ENERGY L.L.C.; LINN OPERATING, INCORPORATED;
MID-CONTINENT I, L.L.C.; MID-CONTINENT II, L.L.C.; MID-
CONTINENT HOLDINGS I, L.L.C.; MID-CONTINENT II, L.L.C.,

      Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and SOUTHWICK and ENGELHARDT,
Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This case requires us to interpret a Chapter 11 bankruptcy plan.  One
class of lenders extended billions of dollars of credit to the debtor and its

No. 18-40443

affiliates. The class argues that the language of the bankruptcy plan entitles it to over thirty million dollars in post-petition default interest. We conclude the plan does not so provide and AFFIRM.

FACTUAL AND PROCEDURAL HISTORY

We will refer to the debtors, Linn Energy, LLC and its affiliates, as the "Linn Debtors" or the "Debtors." One class of its creditors, whom we will call the "Linn Lenders" or at times just the "Lenders," includes over 40 financial institutions and lender banks that pre-petition collectively extended billions of dollars in credit to the Linn Debtors under the terms of the operative Linn Credit Agreement. UMB Bank serves as the administrative agent for the Lenders. Although the underlying bankruptcy reorganization is complex, the issue now before the court is narrow. The factual and procedural history relevant to the resolution of the issue is as follows.

The Linn Credit Agreement dated April 24, 2013, provided that in the case of an "Event of Default," such as a voluntary reorganization, all loans then outstanding would bear interest at a rate of two percent above the otherwise applicable base rate. The Linn Debtors filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code in May 2016. In July 2016, the bankruptcy court entered a Final Cash Collateral Order in which the Linn Lenders reserved the right to assert claims later for additional interest at a post-default rate of two percent plus the otherwise applicable rate. In September 2016, the Lenders submitted proofs of claim, three of which expressly listed identical claims for "additional interest" at the default rate and referred to the Linn Credit Agreement. The contested claim for post-petition default interest ultimately was for $31,187,459.26, representing the amount of interest "at the postdefault rate of two percent" above the rate otherwise applicable.

No. 18-40443

The Linn Debtors' bankruptcy plan (the "Plan") was subsequently accepted by its creditors and confirmed by the bankruptcy court. Two articles of the Plan are relevant to this appeal. The first, Article III.B.3(b), provides for the payment of interest using these terms:

> Notwithstanding any other provision of this Plan to the contrary, on the Effective Date, the LINN Lender Claims are Allowed as fully Secured Claims under section 506(b) of the Bankruptcy Code having first lien priority in the amount of $1.939 billion on account of unpaid principal, plus unpaid interest, fees, other expenses, and other obligations arising under or in connection with the LINN Lender Claims, or as set forth in the LINN Credit Agreement other Loan Documents (as defined in the LINN Credit Agreement), in each case, not subject either in whole or in part to off-set, disallowance or avoidance under chapter 5 of the Bankruptcy Code or otherwise, or any legal, contractual, or equitable theory for claims . . . .

The other relevant section of the Plan, Article VI.F, is captioned "No Postpetition or Default Interest on Claims." It elaborates this way:

> Unless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any documents that govern the LINN Debtors' prepetition funded indebtedness to the contrary, (a) postpetition and/or default interest shall not accrue or be paid on any Claims and (b) no Holder of a Claim shall be entitled to: (i) interest accruing on or after the Petition Date on any such Claim; or (ii) interest at the contract default rate, as applicable.

The obvious question is whether Article III.B.3 allows payment of the post-petition default interest being sought by the Linn Lenders, or whether Article VI.F's prohibition on post-petition default interest unless "specifically provided for in the Plan or the Confirmation Order" bars UMB's claim.

The bankruptcy court concluded there was no conflict or ambiguity, that "Article III.B.3 contains no specific reference to default interest," and Article VI.F of the Plan "contains an express prohibition against the payment of any default interest absent a specific provision in the Plan [or] the Confirmation

3

No. 18-40443

Order to the contrary." An award of the additional interest was denied. The Linn Lenders appealed to the district court, which affirmed. The Linn Lenders then appealed to this court.

DISCUSSION

In reviewing bankruptcy court decisions, "conclusions of law and mixed law and fact questions are reviewed *de novo*, while findings of fact are reviewed for clear error." *Bradley v. Ingalls* (*In re Bradley*), 501 F.3d 421, 428 (5th Cir. 2007). We review the purely legal questions about the meaning of terms in a bankruptcy reorganization plan *de novo*, examining individual terms in the context of the overall plan. *Evercore Capital Partners II, L.L.C. v. Nancy Sue Davis Tr.* (*In re Davis Offshore, L.P.*), 644 F.3d 259, 263 (5th Cir. 2011). Where ambiguity exists, the "bankruptcy court's reasonable interpretation of ambiguous terms in the plan" are accorded deference. *Id.* Both parties insist that the language of the bankruptcy plan is clear, and therefore the court should not look beyond that language to resolve this case.

The Plan is governed by New York law. Under that law, a contract should be enforced according to its terms absent an ambiguity. *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004). In a dispute between two sophisticated parties, as here, New York courts will not construe a contract against the drafter. *See Cummins, Inc. v. Atl. Mut. Ins. Co.*, 867 N.Y.S.2d 81, 83 (N.Y. App. Div. 2008).

Incorporation by reference is an issue in our analysis. New York law provides that another document will be incorporated if "(1) it is clearly identified in the agreement, and (2) the contract contains language that clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract, rather than merely to acknowledge that the referenced material is relevant to the contract." *National Union Fire Ins. Co.*

*v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 322 (S.D.N.Y. 2016) (quotations and citations omitted).  Required is "a clear manifestation of an intent to be bound by the terms of the incorporated instrument." *Federated Mut. Ins. Co. v. Woodstock '99, LLC*, 140 F. Supp. 2d 225, 228 (N.D.N.Y. 2001).  New York courts use an objective standard, asking "whether a reasonable person would understand the specific document to be incorporated by reference." *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 517 (S.D.N.Y. 2018).  If incorporation has occurred, it is "limited to the section and purpose for which the incorporated document is identified." *Id.* at 518.

The Linn Debtors argue as follows.  The language of Article VI.F by itself unambiguously resolves this dispute and requires affirmance.  Article VI.F provides that post-petition or default interest will not accrue or be paid on any claims unless either the Plan or the Confirmation Order "specifically" provides otherwise.  This language eliminates the right to post-petition default interest that would otherwise accrue under the Linn Credit Agreement and other documents governing Linn's pre-petition funded indebtedness.  UMB has been unable to identify any provision in the Plan that specifically permits the recovery of post-petition default interest.  The provisions in the Plan and Confirmation Order that UMB does rely upon also do not provide specifically for post-petition default interest.

UMB responds.  The "No Postpetition or Default Interest on Claims" provision in Article VI.F is explicitly subordinated to every other provision in the Plan or Confirmation Order by that provision's introductory clause: "*Unless otherwise specifically provided for in the Plan or the Confirmation Order*, and notwithstanding any documents that govern the LINN Debtors' prepetition funded indebtedness to the contrary."  Article III.B.3(b) of the Plan does "specifically" provide for post-petition default interest because it states: "Notwithstanding any other provision of this Plan to the contrary," Linn

Lender claims are allowed as fully secured claims, and Linn Lender claims are defined elsewhere in the Plan as the claims "set forth in the proof of claim" filed by the administrative agent for the Linn Lenders. Those claims included the additional interest. Thus, UMB argues we should reverse the district court.

There is no frivolous argument from either side, but only one succeeds. The pre-petition Linn Credit Agreement, which is referenced in the proofs of claim as well as in Article III.B.3 of the Plan, is the source of the right to post-petition default interest at a rate of two percent above the otherwise applicable interest rate: "Notwithstanding the foregoing, (i) if an Event of Default has occurred . . . then all Loans outstanding . . . shall bear interest, after as well as before judgment, at a rate per annum equal to two percent (2%) plus the [otherwise applicable rate] . . . ."

The relevant proofs of claim set out "additional interest" at the "post-default rate" of two percent plus the otherwise applicable interest rate:

> Pursuant to Sections 3.02 and 3.03 of the Linn Credit Agreement, LINN . . . agreed to pay any applicable interest on the outstanding principal of the Loans . . . . Additional interest continues to accrue at the post-default rate of two percent (2%) plus the otherwise applicable rate as provided for in Section 3.02(c) of the Linn Credit Agreement.

Whether the Plan provides for the enforcement or instead the relinquishment of the right to this post-petition default interest is our issue. We agree with the parties and the courts that have examined this issue so far that the language of the Plan is unambiguous. Absent "any ambiguity, we look solely to the language used by the parties to discern the contract's meaning." *Vermont Teddy Bear Co.*, 807 N.E.2d at 879.

In the bankruptcy court's characterization, the "language of Article VI.F is simple and to the point." Beyond doubt, that article prohibits payment of

default or post-petition interest "[u]nless otherwise specifically provided for in the Plan or the Confirmation Order." Article III.B.3 does not contain a specific mention of "default interest," although it does mention "unpaid interest." Therefore, we conclude that none of the language in the Plan or in the Confirmation Order "specifically provides" for post-petition default interest.

Relevant as well is that under the terms of the Final Cash Collateral Order entered on July 29, 2016, the Linn Debtors were obligated to make adequate protection payments "in an amount equal to accrued and unpaid prepetition or postpetition interest calculated at the non-default rate." In that order, the administrative agent for the Linn Lenders reserved but did not assert its right to "adequate protection payments on the Prepetition First Lien Linn Debt at the post-default rate of (2%) plus the otherwise applicable rate."

Additionally, UMB's interpretation would render meaningless the language of Article VI.F, which prohibits claims for default interest arising under "any documents that govern [Linn's] prepetition funded indebtedness." Under New York law, interpretations that render "at least one clause superfluous or meaningless" should be avoided. *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (citation omitted).

Given that the availability of post-petition default interest was specifically reserved when the Final Cash Collateral Order was entered, and that the Plan itself contains an Article entitled "No Postpetition or Default Interest on Claims," we agree with the bankruptcy and district court that failure to make specific mention of "default interest" in Article III.B.3 indicates that the parties intended the omission. *See Quadrant Structured Prods. Co. v. Vertin*, 16 N.E.3d 1165, 1172 (N.Y. 2014). In this context, a reasonable person would not understand the reference to Linn Lender Claims in Article III.B.3 and the definition of the term "Linn Lender Claims" in Article I.A.114 to

No. 18-40443

incorporate by reference the post-default interest rates set forth in the proofs of claim and Credit Agreement. *See Miller*, 291 F. Supp. 3d at 517.

AFFIRMED.