IN THE SUPREME COURT
OF THE VIRGIN ISLANDS
**FILED**
May 20, 2026 10:48 AM
SCT-Civ-2024-0123
**DALILA E. PATTON, ESQUIRE**
**CLERK OF THE COURT**

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **3RC & COMPANY, INC.,** )<br>Appellant/Plaintiff, )<br> )<br>v. )<br> )<br>**BOYNES TRUCKING SYSTEMS, INC.;** )<br>**BOYNES GROUP; BREEZE SHIPPING, INC.;** )<br>**JAMES BOYNES; and JOANNA BOYNES,**[1] )<br>Appellees/Defendants. )<br> ) | **S. Ct. Civ. No. 2024-0123**<br>Re: ST-2014-CV-00624 |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Kathleen Mackay

Argued: July 8, 2025
Filed: May 20, 2026

Cite as: 2026 VI 8

BEFORE: **MARIA M. CABRET**, Associate Justice; **HAROLD W.L. WILLOCKS**, Associate Justice; and **ERNEST E. MORRIS, JR.**, Designated Justice.[2]

APPEARANCES:

**Clive Rivers, Esq.**
Law Offices of Clive Rivers
St. Thomas, U.S.V.I.
        *Attorney for Appellant/Plaintiff,*

**Namosha Boykin, Esq.**
The Boykin Law Firm, PLLC
St. Thomas, U.S.V.I.
        *Attorney for Appellees/Defendants.*

## OPINION OF THE COURT

**WILLOCKS, Associate Justice.**

---

[1] Boynes Group and Breeze Shipping Inc. are not parties to this appeal, as 3RC does not challenge the trial court's rulings with respect to these defendants.

[2] Pursuant to 4 V.I.C. § 24(a), the Honorable Ernest E. Morris, Jr. was appointed as a Designated Justice in this matter due to the recusal of Chief Justice Rhys S. Hodge and Associate Justice Ive A. Swan.

*3RC v. BTS, et al.*                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 2 of 25

¶ 1     Appellant 3RC & Company, Inc. ("3RC") appeals from the August 19, 2024 judgment ("Judgment") and accompanying findings of facts and conclusions of law ("Findings/Conclusions") of the Superior Court of the Virgin Islands ("Superior Court"), entered following a bench trial resolving all of 3RC's claims in the underlying action against Boynes Trucking Systems, Inc. ("BTS"), Boynes Group, Breeze Shipping Inc., James Boynes, and Joanna Boynes. On appeal, however, 3RC challenges the Superior Court's rulings only as to Appellees BTS, James Boynes, and Joanna Boynes (collectively "Appellees").

## I. BACKGROUND

¶ 2     In December 2014, 3RC initiated the underlying lawsuit by filing a complaint alleging that BTS, Boynes Group, and Breeze Shipping Inc., James Boynes, and Joanna Boynes violated what 3RC characterized as a joint venture agreement among 3RC and all defendants, entered into in February 2009 to operate a fuel distribution business. 3RC alleged the following seven counts: Count I-"Injunctive Relief" (against all defendants);[3] Count II-"Self-Dealing" (against James Boynes and Joanna Boynes only); Count III-"Breach of Fiduciary" (against James Boynes and Joanna Boynes only); Count IV-Waste (against all defendants); Count V-"Breach of the Joint Venture Agreement" (against all defendants); Count VI-"Breach of Contract" (against all defendants); and Count VII-"Unjust Enrichment" (against all defendants). 3RC sought the following relief against the defendants "jointly and severally": "(a) Declaratory judgment declaring the rights of the parties[;] (b) Preliminary and permanent injunction against the Defendants from further Self Dealing[;] (c) An accounting of all revenues and expenditures[;] (d)

---

[3] The Superior Court had denied 3RC's request for injunctive relief in a prior order which we subsequently affirmed on appeal. *See 3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 548 (V.I. 2015).

*3RC v. BTS, et al.*                                          2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 3 of 25

Damages, both compensatory, and expectancy[;] (e) Attorney fees and cost[s]; (f) Such further relief[ ] as the court deems just."

¶ 3      In September 2019, the Superior Court held a three-day bench trial. The court heard testimony from six witnesses—Franklin Schjulterbrandt, Raymond Greene, and Roan Creque for 3RC; James Boynes, Joanna Boynes, and Lenore Edgecombe for the defendants—and admitted various exhibits into evidence. At the conclusion of trial, the court took the matter under advisement.

¶ 4      On August 19, 2024, the Superior Court entered its Findings/Conclusions based on an examination of the parties' exhibits and testimony presented at trial. Therein, the court identified the five issues that had been tried in the proceeding, and resolved them as follows: (i) as to "whether a joint venture existed between the parties," the court found that "the parties did not form a joint venture or partnership"—and specifically, "3RC and [BTS] did not form a joint venture"—for the fuel operation; (ii) as to "whether [the] [d]efendants breached the joint venture agreement between the parties," the court did not reach this issue given its finding that no joint venture existed between the parties; (iii) as to "whether [James Boynes and Joanna Boynes] breached a fiduciary duty to 3RC," the court concluded that "[3RC] did not prove its claims for breach of fiduciary duty against James Boynes and Joanna Boynes"; (iv) as to "whether 3RC is entitled to damages," the court concluded  that 3RC is entitled to damages from BTS for breach of contract in the amount of $494,098.47 and for breach of fiduciary duty in the amount of $25,000.00; and (v) as to "whether [the] [d]efendants were unjustly enriched by retaining 3RC's share of the joint venture profits entitling 3RC to restitution," the court concluded that "[t]he existence of a contract and the finding of a breach of contract bars 3RC's claim for unjust enrichment."

*3RC v. BTS, et al.*
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 4 of 25

2026 VI 8

¶ 5    Consistent with its Findings/Conclusions, the Superior Court contemporaneously entered Judgment ordering, *inter alia*, that 3RC be "awarded... the sum of...$519,098.47 against [BTS]" with prejudgment interest accruing as of October 1, 2019, and that 3RC's claims against the remaining defendants—Boynes Group, and Breeze Shipping Inc., James Boynes, and Joanna Boynes—dismissed with prejudice.

¶ 6    On August 30, 2024, 3RC filed a motion for reconsideration of the Superior Court's Judgment and Findings/Conclusions pursuant to Rule 6-4 of the Virgin Islands Rules of Civil Procedure. Therein, 3RC argued that the "court erred when it held that there was no joint venture between the parties," that the "court erred in calculating the measure of damages owed to [3RC]," and that the "court erred when it dismissed [BTS'] principals although the principals disregarded the corporate entity in their day-to-day operations."[4] 3RC thus concluded that the Judgment "require[d] correction."

¶ 7    On December 19, 2024, before the Superior Court ruled on that motion, 3RC filed a notice of appeal from the Superior Court's Judgment and Findings/Conclusions.[5] On February 18, 2025,

---

[4] We take judicial notice of the underlying docket and papers. *See Cianci v. Chaput*, 64 V.I. 682, 690 n.2 (V.I. 2016) (recognizing that courts may take judicial notice of other courts' dockets and papers); *cf. King v. Appleton*, 61 V.I. 339, 348 (V.I. 2014) ("[T]he Superior Court may take judicial notice of the existence of a document that has been filed with it in another proceeding.") (internal quotation marks and citation omitted).

In its August 30, 2024 motion, 3RC identified three issues: (i) "Did the Trial Court err when it entered a conclusion of law [regarding joint venture] that is contrary to the binding precedent of the Supreme Court of the United States Virgin Islands?" (ii) "Did the Trial Court err when it calculated the measure of damages at a sum that was less than the general and consequential damages that are the proper remedy for a breach of in under the laws of the United States Virgin Islands?" (iii) "Did the Trial Court err when it dismissed the principals of the Defendant company from the suit although the testimony and evidence indicated that the principals disregarded the corporate form of Boynes Trucking and used it for personal purposes?"

[5] On January 7, 2025, 3RC filed an amended notice of appeal to "cure deficiencies."

*3RC v. BTS, et al.*                                        2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 5 of 25

3RC filed its appellant's brief. In response, Appellees filed their brief in which they, *inter alia*, argued that this Court "lacks subject matter jurisdiction to consider this appeal because it was not timely filed." (Appellee's Br. 1). Thereafter, 3RC filed its reply brief.

¶ 8     On July 8, 2025, 3RC, BTS, James Boynes, and Joanna Boynes appeared before this Court for oral argument.

## II. DISCUSSION

### A. Jurisdiction

¶ 9     "This Court, being an appellate court, is a court of limited jurisdiction, and must be satisfied of its own appellate subject matter jurisdiction before it considers the merits of an appeal." *World Fresh Mkts., LLC v. Henry*, 71 V.I. 1161, 1167 (V.I. 2019) (citations omitted). Thus, before reaching the merits of 3RC's appeal, we must first address Appellees' challenge to this Court's appellate jurisdiction.

¶ 10    The Revised Organic Act of 1954 provides this Court with appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law. . . ." 48 U.S.C. § 1613a(d). Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court [of the Virgin Islands], or as otherwise provided by law." 4 V.I.C. § 32(a). An "order that disposes of all claims submitted to the Superior Court [of the Virgin Islands] is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)); *see also Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 706-07 (V.I. 2010) ("The general rule is that a decision is considered final when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"); *Estate*

*3RC v. BTS, et al.*                   2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 6 of 25

*of George v. George,* 50 V.I. 268, 274 (V.I. 2008) (quoting *Berke v. Bloch,* 242 F.3d 131, 134 (3d Cir. 2001)).

¶ 11    In this instance, it is undisputed that the Superior Court's August 19, 2024 Judgment was a final judgment—based on its Findings/Conclusions following a bench trial—that resolved all the claims submitted for adjudication in the underlying matter. Nevertheless, Appellees argue that this Court "lacks subject matter jurisdiction to consider this appeal because it was not timely filed"— *to wit,* 3RC's notice of appeal was not filed within the thirty-day deadline, which they contend was not tolled by 3RC's August 30, 2024 motion for reconsideration because that motion "[wa]s not within the grounds specified in [Rule 5(a)(4) of the Virgin Islands Rules of Appellate Procedure]." Relying on *Khalil v. Guardian Insurance Co.,* 59 V.I. 892 (V.I. 2013), Appellees further contend that this Court "has clearly stated that, unlike the motions specified in rule 5(a)(4), a 'motion for reconsideration did not properly toll time to appeal.'"

¶ 12    Appellees' argument is unpersuasive. First, the timeliness of the appeal does not affect this Court's subject matter jurisdiction. Rule 5(a)(1) of the Virgin Islands Rules of Appellate Procedure ("Appellate Rule 5(a)(1)")—which sets forth the thirty-day time limit for filing a notice of appeal in a civil case, *see* V.I. R. APP. P. 5(a)(1)—is merely a claims-processing rule, as opposed to a jurisdictional requirement. *See Peters v. People,* 60 V.I. 479, 481 n.1 (V.I. 2014) (observing that "despite our previous case law describing a timely appeal as a jurisdictional requirement, we have long since 'reconsidered this approach and now treat the time limits established by [Appellate] Rule 5 as claims processing rules'" (quoting *Bryan v. Gov't of the V.I.,* 56 V.I. 451, 455 (V.I. 2012))); *see also Gov't of the V.I. v. Crooke,* 54 V.I. 237, 253-54 (V.I. 2010) ("It is well established that time limits set exclusively by court rules are mere claims-processing rules which do not affect

*3RC v. BTS, et al.*      2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 7 of 25

a court's subject-matter jurisdiction even if they may result in dismissal if violated." (citing *Bowles v. Russell*, 551 U.S. 205, 210-11 (2007))); *Vazquez v. Vazquez*, 54 V.I. 485, 489-90 (V.I. 2010) ("Consequently, because no statute requires that a civil litigant file a notice of appeal to this Court within thirty days or prohibits this Court from considering moot appeals, neither requirement relates to this Court's subject matter jurisdiction, and thus [the appellee] has waived her right to challenge either issue."); V.I. R. App. P. 1(i) ("These rules shall not be considered to extend or limit the jurisdiction of the Supreme Court of the Virgin Islands as established by law."); *cf. People v. Freeman*, 57 V.I. 336, 340 (V.I. 2012) (recognizing that the thirty-day statutory appeal deadline set forth in in 4 V.I.C. § 33(d)(5) is jurisdictional (citing *First American Development Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 601 (V.I. 2011))).

¶ 13 Second, the filing of 3RC's August 30, 2024 motion extended the thirty-day deadline pursuant to Rule 5(a)(4) of the Virgin Islands Rules of Appellate Procedure ("Appellate Rule 5(a)(4)"). Although styled as a motion for reconsideration under Rule 6-4, 3RC's motion substantively challenged the Superior Court's Findings/Conclusions and sought alteration, amendment, or relief from the August 19, 2024 Judgment based on alleged legal error. *See supra* note 4. Rule 6-4 expressly provides that, "[e]xcept as provided in Rules 59 and 60 relating to final orders or judgments, a party may file a motion asking the court to reconsider its order or decision within 14 days after the entry of the ruling, unless the time is extended by the court." V.I. R. CIV. P. 6-4(a). Because the August 19, 2024 Judgment was final and terminated the litigation, any post-judgment relief therefore lay under Rules 59 or 60—and not Rule 6-4—of the Virgin Islands Rules of Civil Procedure. *See* V.I. R. CIV. P. 59(e) (setting forth the time limit for filing a motion to alter

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 8 of 25

or amend a judgment); *see also,* V.I. R. CIV. P. 60(b) (setting forth grounds for relief from a final judgment).

¶ 14    This Court has repeatedly held "that the substance of a motion, and not its caption, shall determine under which rule that motion is construed." *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 612 (V.I. 2012) (quoting *Joseph v. Bureau of Corrections*, 54 V.I. 644, 648 n.2 (V.I. 2011)). Accordingly, because the substance of a motion—not its caption—determines the rule under which the motion is construed, 3RC's August 30, 2024 motion is properly construed as a motion under Rule 59(e) or Rule 60(b), thereby bringing it within the ambit of Appellate Rule 5(a)(4), which extended the time to file a notice of appeal. *See* V.I. R. APP. P. 5(a)(4) ("If any party timely files in the Superior Court a motion for judgment as a matter of law; to amend findings or make additional findings; for a new trial; to alter or amend the judgment or order; or (if filed within 28 days) for relief from the judgment or order, the time for filing the notice of appeal for all parties is extended until 30 days after entry of an order disposing of the last such motion; provided, however, that the failure to dispose of any motion by order entered upon the record within 120 days after the date the motion was filed shall constitute a denial of the motion for purposes of appeal.").

¶ 15    Finally, Appellees' reliance on *Khalil* is misplaced. *Khalil* did not consider whether the filing of a motion for reconsideration tolls the thirty-day deadline for filing a notice of appeal; rather, in that case, this Court addressed—and rejected—the appellant's attempt to use an appeal from later orders awarding attorney's fees and prejudgment interest to revive appellate review of an earlier summary judgment decision for which the appeal period had expired.

¶ 16    Accordingly, this Court has jurisdiction over this appeal.

*3RC v. BTS, et al.*                                   2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 9 of 25

## B. Overview of Issues

¶ 17    On appeal,[6] 3RC argues that the Superior Court erred: (i) "when it entered a conclusion of law regarding joint ventures that is contrary to [our] binding precedent;" (ii) "when it calculated the measure of damages at a sum that was less than the general and consequential damages that are the proper remedy for a breach of contract under the laws of the United Staes Virgin Islands;" and (iii) "when it dismissed the principals [Appellees James Boynes and Joanna Boynes] of the Appellee[] company [BTS] from the suit although the testimony and evidence indicated that the principals acted as their company's alter ego when they disregarded the corporate form of and diverted company funds for personal used and consumption." As such, 3RC concludes that this Court should "reverse the lower court, vacate the Judgment, and enter a damages award consistent with the facts presented at trial."

## C. Standard of Review

¶ 18    Our standard of review in examining the Superior Court's application and construction of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (citing *In re Reynolds*, 60 V.I. 330, 333 (V.I. 2013)). "Clear error is a very deferential standard; an appellate court should only reverse a factual determination as being clearly erroneous if it is completely devoid of minimum evidentiary support or ... bears no rational relationship to the supportive evidentiary data." *In re Estate of Small*, 57 V.I. 416, 430 (V.I. 2012) (internal quotation marks and citations omitted).

---

[6] In its appellate brief, 3RC identified the same three issues enumerated in its August 30, 2024 motion. *See supra* note 4.

*3RC v. BTS, et al.*                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 10 of 25

### D. Whether the Superior Court Erred in Concluding that no Joint Venture Existed

¶ 19    In its brief, 3RC argues that the Superior Court erred in concluding that no joint venture existed between the parties as to the fuel operation, asserting that all elements of a joint venture were established and that, "[u]nder the U[niform] P[artnership] A[ct] as codified in Title 26, there was a joint venture between Roan Creque, Ornette Creque, 3RC, Joanna Boynes, James Boynes, and [BTS]."

¶ 20    In response, Appellees argue that "[t]he trial court correctly found that there was no joint venture between the parties, either by written agreement, by operation, or otherwise."

#### 1. Joint Venture

¶ 21    In *3RC & Co. v. Boynes Trucking Sys.*, we recognized that "even though a joint-venture agreement can exist without a writing, 'the Virgin Islands Code incorporates the Uniform Partnership Act of 1997' to govern partnerships and joint ventures in the Virgin Islands." 63 V.I. 544, 560 (V.I. 2015) (quoting *Yusuf v. Hamed*, 59 V.I. 841, 849-50 (V.I. 2013) (citing 26 V.I.C. §§ 1-274)). "Under the Uniform Partnership Act, 'in the absence of a written ... agreement,' a partnership or joint venture can be shown by evidence of 'the express or implied intent of the parties,' 'joint control and management of the business,' the sharing of the profits and losses, and 'a combination of property, skill or knowledge.'" *Id.* at 560 (quoting *Yusuf*, 59 V.I. at 850 (internal quotation marks and alterations omitted)). "'A person who receives a share of the profits of a business is presumed to be a partner in the business' unless those profits were received as payment of a debt, for services of an independent contractor, employee compensation, rent, 'an annuity or other retirement or health benefit,' loan interest, or 'for the sale of the goodwill of a business.'" *Yusuf*, 59 V.I. at 850 (citing 26 V.I.C. § 22(c)(3)(i)-(vi); UNIF. PARTNERSHIP ACT 1997 §

*3RC v. BTS, et al.*
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 11 of 25

2026 VI 8

202(c)(3)(i)-(vi)). But "no single factor is determinative" – instead, "it is necessary to examine the ... relationship as a whole." *Yusuf*, 59 V.I. at 850 (quoting *Griffith Energy, Inc. v. Evans*, 925 N.Y.S.2d 282, 283 (App. Div. 2011) (citation omitted) and citing *Tedeton v. Tedeton*, 87 So. 3d 914, 924 (La. App. Ct. 2012) ("There are no hard and fast rules in making the determination of whether a partnership exists and each case must be considered on its own facts."); *Wood v. Phillips*, 823 So. 2d 648, 653 (Ala. 2001) ("There is no settled test for determining the existence of a partnership. That determination is made by reviewing all the attendant circumstances.")).

¶ 22 As a preliminary matter, the record reflects ambiguity regarding the identity of the parties to the alleged joint venture agreement governing the fuel operation. In its complaint, 3RC alleged that it entered into a joint venture with BTS, Boynes Group, Breeze Shipping Inc., James Boynes, and Joanna Boynes. However, notwithstanding its general conclusion that "the parties did not form a joint venture," a review of the Findings/Conclusions demonstrates that the Superior Court treated 3RC and BTS as the relevant joint venture participants. In doing so, the court attributed the actions of the respective principals to the entities—attributing the actions of Roan Creque and Ornette Creque to 3RC, and the actions of James Boynes and Joanna Boynes to BTS—rather than treating the principals as individual joint venturers. Consistent with that approach, the Superior Court's joint venture analysis focused exclusively on 3RC and BTS and expressly concluded that "[u]nder Virgin Islands law, 3RC and [BTS] did not form a joint venture."

¶ 23 On appeal, notwithstanding 3RC's general assertion that "there was a joint venture between Roan Creque, Ornette Creque, 3RC, Joanna Boynes, James Boynes, and [BTS]," 3RC's arguments likewise treat 3RC and BTS as the relevant joint venture participants, consistent with the Superior Court's approach. Accordingly, our review is confined to whether the Superior Court erred in

*3RC v. BTS, et al.*                                  2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 12 of 25

concluding that no joint venture existed between 3RC and BTS and, for purposes of our review, we similarly attribute the actions of the respective principals to the entities.

### 2. The Superior Court's Findings/Conclusions[7]

¶ 24    In its Findings/Conclusions, the Superior Court found that "[t]he parties never executed a joint venture agreement" and therefore addressed each of the joint venture elements, ultimately concluding that "under Virgin Islands law, 3RC and [BTS] did not form a joint venture."

¶ 25    As to the "combination of property, skill, or knowledge" factor, the court found that "[t]he parties did combine their properties, skills, and knowledge of the industries."

¶ 26    With respect to the "joint control and management of the business" factor, the court similarly determined that the parties "did not have joint control and management of the fuel operation," reasoning that (i) "[BTS] and its principals controlled the gross income and paid expenses," (ii) the parties "did not have equal rights in the management and conduct of the fuel operation," and (iii) neither entity possessed authority over the other—specifically, "3RC had no authority over [BTS]" and "[BTS] had no authority over 3RC."

¶ 27    Regarding the "sharing of the profits and losses" factor, the court determined that the parties did not share profits and losses, finding that (i) "Creque, 3RC, and the Boynes parties had no agreement to share" them; (ii) "Creque and 3RC did not receive any profits from the fuel operation," and (iii) the court "did not receive sufficient evidence to determine if the fuel operation was profitable or suffered losses, and if so, how much."

---

[7] Although the Superior Court placed certain determinations regarding the elements in the "Conclusions of Law" section of its Findings/Conclusions, they constitute findings of fact grounded in the evidentiary record, not conclusions of law derived from the application of legal principles. We therefore look to the substance of the determinations, not their labels.

*3RC v. BTS, et al.*                                     2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 13 of 25

¶ 28    Finally, with respect to the "express or implied intent" factor, the court found that "3RC and [BTS] did not intend to form a partnership." The court noted that although "Creque and 3RC intended to share in the profits and losses," the intent of BTS, James Boynes, and Joanna Boynes when they started doing business with Creque was "unknown" but they "acknowledged that the monies that Creque contributed to the fuel operation were not loans."

¶ 29    We now examine the record bearing on the joint venture factors to determine whether the Superior Court erred in concluding that no joint venture existed between 3RC and BTS. At the outset, 3RC asserts in its appellant's brief that there is "copious evidence that the parties combined their property, business contacts, equipment, and other assets to create and operate a viable fuel delivery business for their mutual benefit," and thus does not dispute the Superior Court's finding on that factor. We therefore limit our review to the remaining three joint venture factors.

### 3.  Joint Venture Factors

#### a.  Express or implied intent of the parties

¶ 30    The record supports an inference that the parties intended to operate the fuel enterprise jointly.

¶ 31    14-1 Lindbergh Bay. The record reflects the Lindbergh Bay property was leased in 3RC's name, with 3RC providing the security deposit as well as the first and last month's rent, yet BTS set up its office and operated a fuel business from that location. The lease remained in 3RC's name throughout the relevant period, from 2009 through at least 2014. The record further shows that 3RC initially paid to have the property prepared for the fuel operation (i.e., cleared bushes and debris; installed concrete slab for gas pumps and storage tanks; connected sewage line) while BTS later paid for additional construction so that retail fuel sales could commence. These actions

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 14 of 25

demonstrate that 3RC contributed the physical site necessary for the fuel enterprise while BTS carried out the day-to-day fuel operations. Such coordinated investment in and use of the property supports an inference that 3RC and BTS intended to undertake the fuel operation together.

¶ 32    3RC's Truck and Tanks. The record shows that 3RC purchased several trucks and tanks in furtherance of the fuel operation, and these vehicles were insured under BTS' policy as part of BTS' fleet. BTS then used these vehicles as part of the fuel operation. This integration of assets and operations likewise supports an inference that 3RC and BTS intended to undertake the fuel operation together.

¶ 33    Banco Popular Collateral Authorization Agreement. The record further reflects that BTS assisted 3RC in obtaining the $900,000 loan with Banco Popular by conveying certain equipment as collateral, agreeing to procure insurance for said equipment, and undertaking to maintain it in good condition. By assuming these obligations in connection with financing obtained by 3RC for the fuel operation, BTS participated in securing the capital necessary to establish the enterprise. Such conduct supports an inference that 3RC and BTS intended to undertake the fuel operation together.

¶ 34    BTS' Financial Statements. The record also shows that BTS was aware that its 2009-2014 financial statements prepared by BTS' own accountant all indicated:

> As of July 2009, the company operated from 14-1 Lindbergh Bay. The company operates from these premises under an operating lease agreement in the name of one of its venture partners of the oil and diesel operations.

The absence of a correction of this statement by BTS regarding 3RC's description as a "venture partner[ ] of the oil and diesel operations" supports an inference that 3RC and BTS intended to undertake the fuel operation together.

*3RC v. BTS, et al.*            2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 15 of 25

¶ 35   <u>Logos on the Fuel Operation Vehicles</u>. The record further demonstrates that the trucks and trailers used for the fuel operation displayed marks identifying both BTS and 3RC. Such identifying marks were required by the Department of Transportation and Hovensa.[8] The presence of both companies' names on the vehicles reflects that the parties publicly associated themselves with the fuel operation and presented the enterprise to regulators and customers as a joint undertaking. This representation to third parties likewise supports an inference that 3RC and BTS intended to undertake the fuel operation together.

¶ 36   Viewed collectively, the record supports the inference that 3RC and BTS intended to undertake the fuel operation as a joint enterprise.

### b. Sharing of the profits and losses

¶ 37   The record likewise suggests that the parties shared in the financial benefits and burdens of the fuel operation, bearing on the "sharing of profits and losses" factor.[9]

¶ 38   <u>3RC's 2008 Loans</u>. The record reflects that 3RC obtained loans from Banco Popular ($900,000), the Government Development Bank ($50,000), and the Small Business Administration ($100,000) to finance the fuel operation. The record further shows that BTS made payments for several years toward those loans using funds from its operating accounts, which included revenues generated from the fuel operation conducted at Lindbergh Bay. By making payments toward loans

---

[8] The petroleum sold through the fuel operation was purchased from Hovensa and transported from Hovensa's premises.

[9] The record reflects that BTS commingled revenues from the fuel operation with revenues from its other business activities and did not separately account for the fuel operation's financial performance. As a result, the record does not establish whether the operation generated profits or operated at a loss. Nevertheless, the use of those revenues to service enterprise debt remains relevant to the analysis of the "sharing of profits and losses" factor.

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 16 of 25

incurred to finance the fuel operation using revenues generated by that operation—and by providing equipment as collateral for the Banco Popular loan—BTS participated in servicing debt incurred to establish the enterprise. This conduct suggests that revenues generated by the operation were treated as funds of the fuel enterprise rather than as revenues belonging solely to BTS, supporting an inference that the parties contemplated sharing in the benefits of the venture and in the financial burdens of the enterprise.

¶ 39    <u>Electricity and Rent at the 14-1 Lindbergh Bay</u>. The record also shows that the electricity account with the Virgin Islands Water and Power Authority ("WAPA") for the Lindbergh Bay property was maintained in 3RC's name; however, BTS paid the WAPA bills. Similarly, although the lease for the Lindbergh Bay property remained in 3RC's name, BTS paid the rent. The record further shows that BTS made these payments using funds from its operating accounts, which included revenues generated by the fuel operation conducted at Lindbergh Bay. By paying these operating expenses for the property where the fuel operation was conducted using revenues generated by that operation further suggests that revenues generated by the operation were treated as funds of the fuel enterprise rather than as revenues belonging solely to BTS. This supports an inference that the parties contemplated sharing in the benefits of the venture and in the financial burdens of the enterprise.

¶ 40    Taken together, the record supports an inference that 3RC and BTS shared in the financial benefits and burdens of the fuel operation. Although actual profits or losses are unclear because BTS did not separately account for the fuel operation's financial performance apart from its other business activities,[10] the parties' financial arrangements treated the operation's revenues and

---

[10] *See supra* note 9.

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 17 of 25

obligations as shared—circumstances supporting an inference regarding the sharing of profits and losses.

### c.  Joint control and management of the business

¶ 41    Finally, the record indicates that 3RC and BTS jointly participated in the control and management of the fuel operation.

¶ 42    Fuel Pricing for the Operation. The record shows that the price of fuel sold through the Lindbergh Bay operation was determined by reference to several factors, including prevailing fuel prices and the operation's overhead expenses. Those expenses included, among other things, the loans obtained by 3RC to finance the operation, as well as electricity and rent associated with the Lindbergh Bay property. The inclusion of these enterprise expenses in determining the retail fuel price reflects that the parties treated those obligations as operating costs of the business itself. Such arrangement bears on the joint control factor because it demonstrates that the financial structure of the fuel operation—including how costs were recovered through fuel pricing—was tied to expenses incurred by both parties in furtherance of the enterprise.

¶ 43    Initial Fuel Purchase from Hovensa. The record shows that 3RC paid approximately $290,000 for the initial fuel purchase from Hovensa on October 2, 2008. Roan Creque testified to this payment, and Joanna Boynes similarly acknowledged that BTS had not previously purchased fuel from Hovensa before October 2008, although she recalled that BTS began issuing its own checks for fuel purchases later that month or in November and that one or two hauling trips had already occurred. This testimony reflects that 3RC initially financed the acquisition of fuel necessary to begin the enterprise, while BTS simultaneously carried out the transportation and operational activities associated with distributing that fuel. Such coordinated contributions to the

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 18 of 25

establishment and operation of the fuel business support an inference that the parties jointly participated in managing and operating the enterprise.

¶ 44    Training and Certification for Hovensa Access. The record also reflects that, before the first fuel purchase or transport from Hovensa, 3RC paid for the initial training and certification required for drivers to access the Hovensa premises. These expenses included airfare, ground transportation, and meals associated with the required training, and the drivers who attended included James Boynes and Joanna Boynes. The record further shows that 3RC also paid for the fire-retardant garments required by Hovensa for personnel entering its facilities to pump fuel. The certification required to access Hovensa's premises had to be renewed periodically, and the record reflects that BTS subsequently paid for later training and certification of its drivers. By funding the initial training and equipment necessary for BTS' drivers to access Hovensa and transport fuel—while BTS later paid for subsequent certifications—the parties jointly facilitated the operational capability of the fuel enterprise. After this training and certification was completed, BTS drivers were able to access Hovensa's facilities and transport the first fuel order from Hovensa on October 2, 2008. Such coordinated efforts to enable and maintain the drivers' access to Hovensa further indicate that the parties jointly participated in the management and operation of the fuel enterprise.

¶ 45    Titling and Insurance of the Fuel Operation Vehicles. The record further reflects that some of the trucks and trailers used to transport fuel for the operation were purchased and paid for by 3RC in furtherance of the fuel operation but titled in BTS' name and insured under BTS' insurance policy. The record further shows that 3RC initially paid for insurance covering the fleet in 2008 when the additional vehicles were first added to BTS' policy, while BTS paid for the insurance coverage in subsequent years. These vehicles constituted the core operational assets used to

*3RC v. BTS, et al.*          2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 19 of 25

transport fuel for the enterprise. By allocating responsibility for the purchase, titling, and insurance of the fleet between the two entities, the parties' conduct supports an inference that 3RC and BTS jointly managed and maintained the equipment necessary to conduct the fuel operation. This coordinated management of essential operational assets supports an inference that 3RC and BTS jointly controlled the enterprise.

¶ 46    Taken together and considered in the aggregate, all of the foregoing circumstances support the inference that 3RC and BTS jointly participated in the management and control of the fuel operation.

### d. Summation of the Joint Venture Factors

¶ 47    An examination of 3RC and BTS' relationship as a whole favors the conclusion that they entered into a joint venture for the fuel operation. *See Yusuf*, 59 V.I. at 850 (noting that "no single factor is determinative" of whether a joint venture exists and that "it is necessary to examine the … relationship as a whole"). The record shows that 3RC and BTS combined resources to launch the fuel operation, treated revenues as funds of the business, jointly managed the enterprise, and intended to operate it together—circumstances supporting this conclusion.

¶ 48    Accordingly, the Superior Court erred in concluding that no joint venture existed between 3RC and BTS and, as a result, further erred by terminating its analysis at that point and failing to address the remaining elements of 3RC's claim for breach of the parties' agreement concerning their joint venture. *See Phillip v. Marsh-Monsanto*, 66 V.I. 612, 619-20 (V.I. 2017) (conducting a *Banks* analysis and adopting the "historically recognized elements underlying a claim for breach of contract: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages" as the "soundest path forward" for the Virgin Islands).

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 20 of 25

### E. Whether the Superior Court Erred in Calculating the Measure of Damages for 3RC's Breach of Contract Claim Against TBS

¶ 49    Having concluded that no joint venture existed, the Superior Court proceeded directly to analyze 3RC's breach of contract claim, found BTS liable, and entered judgment in favor of 3RC in the amount of $494,098.47. Specifically, the court found that the parties "agreed that the income derived from fuel sales would pay the operating costs of the business, including rent, utilities, salaries, maintenance of the grounds, maintenance of the equipment, freight costs, and repayment of the loans 3RC and Creque procured to fund the fuel operation"; "[BTS] had a duty to pay the aforesaid expenses from the income derived from the fuel operation"; "[BTS] breached its duty to [3RC] when [BTS] stopped making payments on the Banco Popular, Small Business Administration, and Government Development Bank loans and otherwise did not tender equivalent funds to 3RC"; and "[BTS'] breach of its duty entitles 3RC to an award of damages[, i.e.,] the sums [3RC] paid to satisfy and pay off its loans after [BTS] stopped making payments."

¶ 50    However, because the breach of contract claim and the breach of joint venture agreement claim arise from the same operative terms governing the fuel operation, the characterization of the parties' relationship necessarily precedes any determination of breach or damages. Where a joint venture exists, the terms of that joint venture agreement define the parties' respective rights and duties, which in turn determine whether a breach occurred and the appropriate measure of recovery. The joint venture determination is therefore dispositive of the governing legal framework and must be resolved before undertaking any separate breach of contract analysis.

¶ 51    As noted above, the Superior Court erred in concluding that no joint venture existed between 3RC and BTS, and the record supports the existence of a joint venture governing the Fuel Operation. Accordingly, we vacate (i) the denial of 3RC's August 30, 2024 post-judgment motion

*3RC v. BTS, et al.*                                   2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 21 of 25

for reconsideration insofar as it pertains to 3RC's claims for breach of joint venture agreement and breach of contract; (ii) those portions of the Superior Court's Findings/Conclusions that pertain to 3RC's claims for breach of joint venture agreement and breach of contract; and (iii) that portion of the Superior Court's Judgment awarding 3RC damages in the amount of $494,098.47 for breach of contract against BTS, and remand with instructions that the Superior Court first determine whether 3RC established a breach of joint venture agreement before proceeding to any breach of contract analysis.

¶ 52    In light of this remand, review of the damages calculation on the breach of contract claim would be moot. We therefore decline to undertake such review and express no opinion on the proper measure of damages for 3RC's breach of contract claim.

### F. Whether the Superior Court Erred in Dismissing 3RC's Claims against James Boynes and Joanna Boynes

¶ 53    On appeal, 3RC argues that the Superior Court erred in dismissing with prejudice its claims against James Boynes and Joanna Boynes on the grounds that they are personally liable to 3RC under an alter ego/corporate veil piercing theory. However, the record reflects that 3RC did not allege alter ego liability or seek veil-piercing relief in its complaint. Instead, 3RC asserted distinct causes of action against James Boynes and Joanna Boynes, including claims for self-dealing, breach of fiduciary duty, waste, breach of joint venture agreement, breach of contract, and unjust enrichment. Likewise, the trial transcript reflects that 3RC did not set out to prove the elements necessary to establish alter ego liability or corporate veil piercing relief at trial.

¶ 54    Nonetheless, the alter ego issue is not raised for the first time on appeal. As noted above, in its August 30, 2024 post-judgment motion, 3RC advanced the same alter ego/corporate veil piercing arguments it now raises on appeal. That motion, however, was deemed denied by

operation of Appellate Rule 5(a)(4), and the Superior Court did not substantively consider or rule on those arguments.

¶ 55     As the United States Supreme Court has succinctly stated, exercising our appellate jurisdiction under 4 V.I.C. § 32(a) means that "we are a court of review, not of first view." *Lewis v. Rogers*, 73 V.I. 592, 599 (V.I. 2020) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). Accordingly, and particularly in light of our decision to remand this matter on other grounds, we vacate (i) the denial of 3RC's August 30, 2024 post-judgment motion for reconsideration insofar as it pertains to 3RC's alter ego/corporate veil piercing theory and (ii) that portion of the Superior Court's Judgment dismissing with prejudice 3RC's claims against James Boynes and Joanna Boynes, and remand for the Superior Court to consider 3RC's alter ego/corporate veil piercing theory in the first instance, including whether it was raised for the first time in the August 30, 2024 post-judgment motion for reconsideration.

¶ 56     In doing so, we take this opportunity to reaffirm that a post-judgment motion for reconsideration—seeking alteration, amendment, or relief from a judgment—is not a proper vehicle to advance a theory that could have been, but was not, previously raised before judgment. As this Court observed in one of its earliest opinions, "[a] motion for reconsideration . . . . is not a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not." *In re Infant Sherman*, 49 V.I. 452, 457-58 (V.I. 2008). *See also Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (observing that a post-judgment motion for reconsideration brought under Fed. R. Civ. P. 59 "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment"); *United States v. Jasin*, 292

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 23 of 25

F.Supp.2d 670, 677 (E.D. Pa. 2003) (same). Rather, it "serves [a] narrow purpose," *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004), and "is an extraordinary remedy." *In re Infant Sherman*, 49 V.I. at 458. Accordingly, such a motion "should be used sparingly," *Templet*, 367 F.3d at 479, and it is "not to be sought reflexively," *In re Infant Sherman*, 49 V.I. at 458.

¶ 57    Because 3RC styled its post-judgment motion as one for reconsideration under Rule 6-4—rather than under Rule 59 or Rule 60[11]—it is unclear under which rule the motion was brought or what grounds for relief 3RC intended to invoke. Under Rule 59(e), a motion to alter or amend a judgment must rest on one of four recognized grounds: an intervening change in controlling law, newly available evidence, or the need to correct clear error or prevent manifest injustice. *See Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 715 (V.I. 2010) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)). Likewise, Rule 60(b) permits relief only on specified grounds, including mistake, newly discovered evidence, fraud, or other exceptional circumstances. V.I. R. CIV. P. 60(b). Thus, while a post-judgment motion for reconsideration may be prompted by the need "to correct manifest errors of law or fact," *Edionwe*, 860 F.3d at 294, or to address newly arising circumstances, *Beachside Assocs.*, 53 V.I. at 715; V.I. R. CIV. P. 60(b), it nevertheless does not enable a party to advance an argument that it was able, but neglected, to make before judgment. *Edionwe*, 860 F.3d at 295; *see also Jasin*, 292 F. Supp. 2d at 677 (citing *Reich v. Compton*, 834 F. Supp. 753, 755 (E.D. Pa. 1993)). Indeed, a motion for reconsideration "must [be] base[d] . . . on arguments that were previously raised but were overlooked by the [c]ourt." *Jasin*, 292 F.Supp.2d at 677. To be sure, a court cannot "discuss or take up a matter again," i.e., reconsider[12] via a post-

---

[11] *See supra* note 5.
[12] Black's Law Dictionary 1528 (12th ed. 2024).

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 24 of 25

judgment motion, an argument that was not presented to it in some form prior to judgment. *See Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 519 n. 12 (3d Cir. 1997) (noting that "'[c]ourts often take a dim view of issues raised for the first time in post-judgment motions'" (citation omitted)); *see also Gov't of the V.I. v. Innovative Commc'ns Corp.*, 215 F. Supp. 2d 603, 610 (D.V.I. 2002) (explaining, in the context of a post-judgment motion for reconsideration, that such motions are "not the proper forum for raising new legal arguments or theories which could have been addressed initially, and the court need not address such arguments" (citation omitted)); *Banister v. Davis*, 590 U.S. 504, 508 (2020) (observing that with respect to a motion for reconsideration brought pursuant to Federal Rule 59(e), "[i]n keeping with th[e] corrective function" of that rule, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued"). In such circumstances, the court would be granting the movant a prohibited "second bite at the apple," to the extent that a litigant's initial failure to raise an argument usually is considered a waiver thereof. *In re Infant Sherman*, 49 V.I. at 457. Thus, on remand, the Superior Court must first determine whether 3RC's alter ego/corporate veil piercing theory was raised for the first time in its post-judgment motion for reconsideration, in which case it falls outside the permissible scope of such a motion, before determining the governing rule and applicable grounds for relief, if any.

### III. CONCLUSION

¶ 58    For the foregoing reasons, we vacate (i) the denial of 3RC's August 30, 2024 post-judgment motion for reconsideration insofar as it pertains to 3RC's claims for breach of joint venture agreement and breach of contract; (ii) those portions of the Superior Court's Findings/Conclusions that pertain to 3RC's claims for breach of joint venture agreement and breach of contract; and (iii)

*3RC v. BTS, et al.*                                    2026 VI 8
S. Ct. Civ. No. 2024-0123
Opinion of the Court
Page 25 of 25

that portion of the Superior Court's Judgment awarding 3RC damages in the amount of $494,098.47 for breach of contract against BTS, and remand with instructions that the Superior Court first determine whether 3RC established a breach of joint venture agreement before proceeding to any breach of contract analysis.

¶ 59     We also vacate (i) the denial of 3RC's August 30, 2024 post-judgment motion for reconsideration insofar as it pertains to 3RC's alter ego/corporate veil piercing theory and (ii) that portion of the Superior Court's Judgment dismissing with prejudice 3RC's claims against James Boynes and Joanna Boynes, and remand for the Superior Court to consider 3RC's alter ego/corporate veil piercing theory in the first instance, including whether it was raised for the first time in the August 30, 2024 post-judgment motion for reconsideration. Given that this action has been pending since 2014, we are certain that the Superior Court will address the issues on remand promptly. *Cf. Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 n.5 (1988) ("Perpetual litigation of any issue -- jurisdictional or nonjurisdictional -- delays, and therefore threatens to deny, justice.").

**Dated this 20th day of May, 2026.**

**BY THE COURT:**

**HAROLD W.L. WILLOCKS**
**Associate Justice**

**ATTEST:**

**DALILA E. PATTON, ESQ.**
**Clerk of the Court**
**By:** _____
       **Deputy Clerk II**
**Dated:** _____